property of the Debtor's bankruptcy estate under 11 U.S.C. § 541.

The foregoing analysis disposes of the Chapter 7 Trustee's averments concerning whether the trust property qualifies as exempt under 11 U.S.C. § 522(b) as well. Obviously, 11 U.S.C. § 522 applies only to property of Debtor's bankruptcy estate.

### III.

 Finally, the Chapter 7 Trustee alleges that in the event the Court finds that the property is held in trust for the benefit of the children, the dissolution decree transfer was fraudulent under 11 U.S.C. § 548. The allegation lacks factual support. The Court finds that the Trustee has failed to establish the intent element required for a fraudulent transfer, and further finds that the best interest of the children served by the creation of the trust fulfills the reasonably equivalent value requirements of § 548(a)(2). Had the decree not provided for the children by disposing of Debtor's assets in this way, the Montana court would certainly have required Debtor to surrender other rights or property.

IT IS ORDERED a separate Judgment on the merits shall be entered in favor of Debtor/Defendant, Tammy Lee James, d/b/a Just Flowers, dismissing all counts of the Complaint and providing that Debtor's rights in the property described as:

Lots 3 and 4, Block One, (1) Rural Acres Subdivision, Weston County, Wyoming;

are held in trust for the benefit of the James children and are not property of the bankruptcy estate under 11 U.S.C. § 541(b)(1).

**In re Floyd W. MEYER, Irma A. Meyer, Debtors.**

**Bankruptcy No. 87–41521–12.**

United States Bankruptcy Court, D. Kansas.

Sept. 6, 1995.

Lynn D. Lauver, Topeka, KS, for debtors.

Tanya Sue Wilson, Asst. U.S. Atty., Topeka, KS, for U.S., F.M.H.A.

Eric C. Rajala, Trustee, Overland Park, KS.

### ORDER DETERMINING DISPOSABLE INCOME

JULIE A. ROBINSON, Bankruptcy Judge.

On October 25, 1994, the Court entered a Memorandum Opinion and Order denying the trustee's motion for termination of the Chapter 12 proceeding and discharge of the debtors. The Court found that Farmers Home Administration ("FMHA") had made a prima facie showing that there was unremitted disposable income, based on substantial discrepancies between the income and expense figures on the debtors' tax returns, and on their monthly debtor in possession financial reports. The Court further found that the debtors had failed to satisfy their burden of persuading the Court that they had no disposable income to pay their unsecured creditors during the pendency of their plan. The Court identified which categories of expenses needed itemization or clarification and those that the debtors needed to demonstrate were reasonable: expenses associated with their second residence and commuting costs; and expenses incurred for maintenance of the hog facility. Furthermore, the Court questioned whether compensation paid to the debtors' children was necessary or reasonable, since the debtors were supporting these adult children and contributing to their college tuition.

The debtors have now submitted a ledger of checks written for various expenses during the pendency of their plan, as well as a memorandum in justification of certain expenditures. FMHA continues to object to termination or discharge and moves the Court to dismiss this case, arguing that the debtors still fail to reconcile the income and expenses claimed on their tax returns with the ledger or monthly reports.

The debtors have made a good faith effort to reconstruct their financial transactions five years after the fact. In fairness, although the debtors submitted monthly reports that were deficient in the nature and format of disclosure, neither the standing trustee, debtors' counsel, nor any creditor objected to the monthly reports submitted. The debtors were never asked to provide better financial documentation during their Chapter 12 plan. The supplemental documentation they now provide is deficient, although improved. For example, they are unable to reconcile the income on their monthly reports with the income claimed on tax returns. Despite these anomalies, however, the Court will focus on the specific types of expenses identified in its prior order, rather than punish the debtors for their history of poor record keeping.

### I. Second residence and commuting

■ According to the debtors' ledger of actual expenses, they spent $8500 in rent over three years; and another $8600 in utilities, supplies, and furnishings, for a total of approximately $17,000 in expenses for their second residence in Manhattan. They spent approximately $21,500 in fuel, maintenance

and repairs on their automobiles, during this same time period, or about $500 per month. This $38,000 in expenses is reasonable, in light of the $75,000 in additional income the debtors generated from their jobs in Manhattan. And, these expenses were necessary.

If the debtors had commuted the 60–80 miles each way on a daily basis, they would have had no additional living expenses, but would have incurred fuel, maintenance and repair costs substantially more than $21,500. Furthermore, a daily commute might have necessitated the purchase of a new or newer automobile. Therefore, the Court finds that the expenses associated with the second residence and commutes between the two residences were necessary and reasonable, and should be excluded from a computation of disposable income.

## II. *Hog facility*

■ In the prior order, the Court wanted an accounting of the expenses associated with keeping the hog facility operational for two years while the debtors tried to attract tenants. The debtors' supplemental records indicate that they spent $4052 on the facility, including the compensation they paid to their children for maintaining the facility. In the same period, the facility generated $3500 in income. Although the expenses exceeded the income by about $500, the Court finds that it was reasonable to keep the facility operational so as to attract tenants. Prospective tenants would want to see how the facility operated and would not be as inclined to rent an idle facility. Based on the debtors' additional information, the Court finds that the monies expended on the hog facility were necessary and reasonable, and should be excluded from a computation of disposable income.

## III. *Compensation paid to children*

■ In the prior order, the Court indicated that it was troubled by the debtors compensating their children for work on the farm, while at the same time, providing maintenance and support for the children. The Court indicated that the debtors needed to specify the actual amount they paid to their children, the number of hours worked, the hourly wages, and the necessity and reasonableness of sums paid to their children.

The debtors have supplemented their financial records to disclose that they paid their two children a total of $11,292 during the plan.[1] The debtors further disclosed that their children worked an average of 610 hours a year, 15 hours a week during the summer and 8 hours a week during the school year; and that although they were compensated on a job basis, rather than on an hourly basis, the total wages divided by total hours worked reveals an hourly wage of $6.50. The children, a girl in high school, and a boy in college, lived with and were supported by their parents during the period in question. The son lived at the debtors' second residence in Manhattan, and received free room and board. The daughter lived on the farm, as her parents' dependent.

The debtors contend that if their children had not performed this labor, they would have had to pay someone else to perform the work. The children performed necessary chores, such as weed control, fence repair, feeding cattle, and maintenance of the rental buildings and the water system in the hog facility. Without their labor, the debtors may have had to hire help, since they lived in Manhattan during the week, and came home to the farm only on weekends, or occasionally during the week. However, the compensation paid to the children was not reasonable. The debtors ignored the fact that the children were being supported by them, and as members of the household had some responsibility to perform household and farm labor. The children worked no more than 15 hours a week during the summer and 8 hours a week during the school year, a minimal commitment and contribution to the farm and household. Given the minimal hours worked, their dependent status, and the nature of the

---

1. The debtors' tax returns for the years in question show labor expense of less than $700. The debtors explained that they did not claim amounts paid to their own children, on the advice of their accountant. The debtors' monthly reports during the same period reflect $11,045.76 in labor expense (and another $13,768.40 in batched expenses that included labor and other types of expenses).

work performed, the Court cannot find that the compensation paid to the children was reasonable in amount. The debtors should not have compensated their children any more than minimum wage, in light of these circumstances. Had the debtors paid the children $4.25 per hour for the same labor, they would have paid $7383 to the children rather than $11,292. The difference of these two sums, $3909, represents disposable income that should have been paid into the plan, rather than to their children.

**IT IS THEREFORE ORDERED** that the motion to dismiss by Farmers Home Administration is granted unless the debtors pay to the trustee, for distribution to the unsecured creditors, the sum of $3909, by December 31, 1995.